[No. 23246.   Department One.   December 30, 1931.]

DOROTHY M. SIMS, *Appellant*, v. UNITED STATES
NATIONAL BANK *et al., Respondents.*[1]

[1]Reported in 6 P. (2d) 601.

*Fisk & McCarthy,* for appellants.

*McMaster, Hall & Schaefer, M. M. Connor,* and *Bates & Burnett,* for respondents.

HERMAN, J.—The town of Kalama issued coupon general obligation bonds for the purchase of a water system owned by the Orchard Water Company, a corporation. After being executed by the mayor and town clerk of the town of Kalama, the bonds were registered under the provisions of Rem. Comp. Stat., § 5494. This registration was made in the book provided for that purpose, and the name of Orchard Water Company was endorsed on the bonds under that section of the registration record reading "In whose name registered." Thereafter the bonds were delivered to the Orchard Water Company.

Dr. L. M. Sims, who was the owner of stock in the Orchard Water Company, died, and the plaintiff in this action shared with her mother the property of his estate. The Orchard Water Company was dissolved by the decree of the superior court for Cowlitz county, and, under the terms of that decree, seventy-five of the bonds were declared to be the property of plaintiff in this action.

W. G. Drowley, a practicing lawyer in Vancouver, Washington, had for some time been the attorney for Dr. Sims and his daughter, plaintiff herein, and was a friend of long standing. At his suggestion, plaintiff Dorothy M. Sims rented a safe deposit box in Vancouver, and deposited therein her bonds. The box was engaged in the names of both Miss Sims and the attorney. Mr. Drowley received a key to the deposit box, and plaintiff departed for California, where she remained for some years.

During the time Miss Sims was away from this state, Mr. Drowley regularly clipped the coupons from the

bonds as they became due, and deposited the proceeds of the coupons in the Kalama State Bank to the credit of Miss Sims. After Mr. Drowley's death, it was discovered that he had taken from the deposit box thirty-five of the bonds, which were the property of plaintiff, and had deposited them in the three defendant banks to secure loans which were made to him, reserving the right to clip the coupons as they became due and to collect the interest money. These loans were made several years before his death, and were renewed from time to time.

Before pledging these bonds to secure his loans, Mr. Drowley took them from the deposit box and presented them to the town treasurer of Kalama, who endorsed thereon in that section of the registration record reading "In whose name registered," immediately under the name "Orchard Water Company," the words "Released from Registration." On the same line with those words, in that section of the registration record headed by the words "Transfer Agent," the town treasurer signed her name and title, "Elsie Potter, Town Treas."

The town treasurer made no entry in the registration book showing that any change had been made in the registration of the bonds. She testified that there had never been presented to her any written assignment of the bonds authorizing their transfer on the registration record. No testimony was offered that contradicted her on this point. Neither the Orchard Water Company nor Miss Sims ever made any assignment of these bonds.

After Drowley's death, plaintiff learned of his conversion and pledge of the bonds. She instituted an action against each of the defendants with whom the bonds had been hypothecated, seeking to recover possession of the bonds, and to restrain defendants from

disposing of them. By stipulation, the cases were consolidated for trial.

The superior court found the bonds to be negotiable instruments, and that defendants were innocent purchasers thereof, and entered judgment for defendants. From this judgment plaintiff appeals.

Rem. Comp. Stat., § 5494, provides:

"Upon the presentation at the office of the officer or agent hereinafter provided for any bond that has heretofore been or may hereafter be issued by any county, city, town, port or school district in this state, the same may be registered as to principal in the name of the owner upon the books of such municipality to be kept in said office, such registration to be noted on the reverse of the bond by such officer or agent. The principal of any bond so registered shall be payable only to the payee, his legal representative, successors or assigns, and such bond shall be transferable to another registered holder or back to bearer only upon presentation to such officer or agent, with a written assignment duly acknowledged or proved. The name of the assignee shall be written upon any bond so transferred and in the books so kept in the office of such officer or agent."

Respondents contend that there was no registration of the bonds in question because they were coupon bonds. They argue that the fact that coupons were attached to the bonds is evidence that they were not registered. They maintain that a fair construction of the statute quoted is this: That, if the bonds to be issued are registered bonds, the name of the payee should be inserted in the bond and no interest coupons attached thereto; and if the bonds are not to be registered bonds, then they are to be issued, as were the bonds in this case, with all interest coupons attached thereto.

The difficulty with respondents' position in regard to this matter is that it is inconsistent with the pro-

visions of the statute quoted. The section of the statute above quoted (Rem. Comp. Stat., § 5494) in part says:

"Upon the presentation at the office of the officer or agent hereinafter provided for any bond that has heretofore been or may hereafter be issued by any county, city, town, port or school district in this state, the same may be registered as to principal in the name of the owner. . . ."

Respondents also contend that, because there is no direct evidence that the Orchard Water Company requested the registration of these bonds, it cannot be held that the bonds were registered. The answer to that argument is that the statute above quoted does not require the presentation for registration by the owner or any particular person, that the bonds bore an endorsement showing they were registered, and that the owner could and did ratify the act of the town treasurer in registering the bonds by treating them as registered after they bore the town treasurer's endorsement showing them to be registered.

Respondents argue that, if the bonds were registered, they were subsequently released from registration. They justify their position by the fact that the town treasurer wrote on the bonds, "May 3, 1928. Released from Registration. Elsie Potter, Town Treas." The statute above cited (Rem. Comp. Stat., § 5494) prescribes the manner in which bonds registered, as were these, may be transferred back to bearer, and that statute was not complied with. Respondents, before they accepted the bonds as pledges for Mr. Drowley's loans, did not require him to show that the statute had been complied with.

Respondents maintain that, even though the bonds were registered with the town treasurer, they

were still negotiable instruments. In support of that position, they quote from 44 Corpus Juris, p. 1230, § 4212:

" . . . it is now well established that bonds issued by a municipal corporation under statutory authority are negotiable, . . . The registration of municipal bonds does not deprive them of their negotiable quality, . . ."

We cannot believe that the legislature, when it passed § 5494, *supra,* intended that municipal bonds which were registered should be negotiable. That statute provides that, once a bond within its provisions has been registered, it

" . . . shall be transferable to another registered holder or back to bearer only upon presentation to such officer or agent, with a written assignment duly acknowledged or proved."

Registration in accordance with that section of the statute would impart to a municipal bond a feature inconsistent with negotiability.

██ Respondents took as pledges registered bonds which showed by their endorsements that they were registered in the name of the Orchard Water Company. They were left by appellant under Drowley's control, she relying upon the fact that they were registered in accordance with Rem. Comp. Stat., § 5494, and, by virtue of that statute, were transferable to another registered holder or back to bearer only upon presentation to the town treasurer, with her written assignment duly acknowledged or proved. She never gave any written assignment, and respondents, before accepting the bonds as pledges for Drowley's loans, never required any written assignment, as provided for by the statute. Had the banks required a compliance with the statutory provisions relating to the

assignment of registered municipal bonds, neither appellant nor respondents would have lost.

An application of the rule that, where one of two innocent parties must suffer from the act of a third, the one whose conduct made the loss possible must sustain it, requires that appellant's bonds be restored to her.

The case is reversed and remanded, with instructions to proceed in accordance with this opinion.

TOLMAN, C. J., MITCHELL, PARKER, and BEELER, JJ., concur.